UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
One North Broadway, Suite 1502
White Plains, New York 10601
(914) 328-0404
Attorneys of Record for Defendants:
    Susan M. Corcoran (SC 0934)
    Susanne Kantor (SK 8278)

------------------------------------------------------------X
ROSA WEARING,                                  :

                                             :    Index No. 05CIV4558 (CM)(MDF)
               Plaintiff,                 :

-against-                             :    DEFENDANTS' LOCAL
                                             :    RULE 56.1 STATEMENT
ST. CHRISTOPHER'S INC., MUHAMMAD RIAZ,  :    IN SUPPORT OF
LUIS MEDINA and BERNHARD F. MEYER,       :    MOTION FOR
                                             :    SUMMARY JUDGMENT
               Defendants.              :
------------------------------------------------------------X

        Defendants St. Christopher's, Inc., ("St. Christopher's" or the "Agency"), Bernhard Meyer, Muhammad Riaz, and Luis Medina ("Defendants"), by and through their attorneys, Jackson Lewis LLP, respectfully submit this Local Rule 56.1 Statement of Material Facts as to which there is no genuine issue to be tried in support of Defendants' Motion for Summary Judgment.

I. **BACKGROUND INFORMATION ABOUT THE AGENCY AND ITS MISSION**[1]

1. St. Christopher's is a non-profit, non-sectarian social service Agency that has provided care to disadvantaged children and their families for more than 110 years. (See Corcoran Aff. Ex. K at page I-5).[2]

2. The Agency operates two residential treatment centers (in Dobbs Ferry and Valhalla, New York), community-based group homes, and community-based medical and mental health clinics. (See Corcoran Aff. Ex. K at pp. I-6 and I-7).

3. The Residential Treatment Centers in Dobbs Ferry and Valhalla consist of several residential cottages on each of the campuses which house children ages 12 through 18. (See Corcoran Aff. Ex. K at p. I-6).

4. The Agency employs "Cottage Managers" that are responsible for the daily management of a particular cottage. (See Corcoran Aff. Ex. H).

5. Cottage Managers reported directly to the Assistant Director of Youth Services. (See Corcoran Aff. Ex. H).

6. Pursuant to the Agency's "Philosophy on the Treatment of Families and Children," all children in the Agency's care must "always be treated with respect. Ridicule, humiliation, threats of physical or verbal punishment or any means of discipline that would diminish rather than strengthen the child's sense of value and dignity are never acceptable." (See Corcoran Aff. Ex. K at page I-8).

---

[1] These facts are assumed true for purposes of the instant motion only. References to the relevant transcript pages of Plaintiff's deposition are abbreviated herein as "Pl. Dep. __." Copies of all pages of transcript and exhibits cited herein and in Defendants' Memorandum of Law are attached to the Affirmation of Susan M. Corcoran submitted in support of Defendants' motion, abbreviated herein as "Corcoran Aff.___).

[2] A true and correct copy of St. Christopher's Handbook, marked as Exhibit 6 at the September 21, 2005 deposition of Plaintiff, is annexed to the Corcoran Aff. as Exhibit K.

2

7. To ensure the above philosophy is implemented, the Agency has a well-defined policy for investigating and reporting incidents of alleged abuse. (See Corcoran Aff. Ex. K at page I-8).

8. In its Employee Handbook, the Agency also has well-defined standards and rules of conduct, an equal employment opportunity policy, anti-harassment policies, an open-door policy and a complaint resolution procedure. (See Corcoran Aff. Ex. K at pp. I-9 through I-19).

9. At the time Plaintiff last worked at the Agency in January 2002, Defendant Luis Medina was the Executive Director of St. Christopher's. (Pl. Compl. ¶ 8).[3]

10. At the time Plaintiff last worked at the Agency in January 2002, Defendant Bernhard Meyer was the Agency's Director of Human Resources. (Pl. Compl. ¶ 9).

11. At the time Plaintiff last worked at the Agency in January 2002, Defendant Muhammad Riaz was the Program Director for St. Christopher's. (Pl. Compl. ¶ 7).

12. Mr. Riaz became the Program Director for St. Christopher's in or about 1997. (Pl. Compl. ¶ 11(c)).

## II. BACKGROUND INFORMATION ABOUT PLAINTIFF'S EMPLOYMENT WITH ST. CHRISTOPHER'S, INC.

13. Plaintiff was born in 1965 in Bronx, New York. (Pl. Dep. 7-8).

14. After graduating high school, Plaintiff attended college in Ohio for "a couple of years" with an interest in journalism. (Pl. Dep. 9-10).

15. Plaintiff began her employment with St. Christopher's in Dobbs Ferry, New York in 1987. (Pl. Dep. 12; Compl. ¶ 11(b)).

16. Plaintiff received a copy of the Agency's Employee Handbook while she was employed by the Agency. (Pl. Dep. 299-300).

---

[3] See Corcoran Aff. Exhibit A.

3

17.     Plaintiff was initially hired by the Agency as a Child Care Worker. (Pl. Dep. 105).

18.     Plaintiff was subsequently promoted to a Cottage Supervisor (now called "Cottage Manager"). (Pl. Dep. 105).

19.     Plaintiff also worked as an Assistant Director for St. Christopher's (in the 1990's). (Pl. Dep. 91, 105).

20.     Due to downsizing issues within the Agency, Plaintiff voluntarily chose to return to a Cottage Manager position with no reduction in salary. (Pl. Dep. 92-93).

21.     Plaintiff's compensation with the Agency as a Cottage Manager was higher than that of other female managers. (Pl. Dep. 216-17; Pl. Compl. ¶ 11(b)).

22.     Plaintiff does not know how her level of compensation compared to male employees in comparable positions. (Pl. Dep. 218).

23.     Mr. Riaz told Plaintiff that she was paid more than the other managers. (Pl. Dep. 217).

24.     Plaintiff's job duties as a Cottage Manager included supervision of Cottage staff and running the Cottage. (Pl. Dep. 187; Pl. Dep. Ex. 2[4]).

25.     Plaintiff's hours of work as a Cottage Manager for the Agency were generally 3:30 p.m. - 11:30 p.m. (Pl. Dep. 106).

26.     Plaintiff last worked for St. Christopher's in January, 2002. (Pl. Dep. 110).

27.     At that time, Plaintiff reported to Sylvester Williams and Terry Johnson. (Pl. Dep. 58).

---

[4]     A true and correct copy of Plaintiff's job description, marked as Exhibit 2 at the September 21, 2005 deposition of Plaintiff, is annexed to the Corcoran Affirmation as Exhibit H).

4

### III. PLAINTIFF'S ADDITIONAL EMPLOYMENT OUTSIDE OF HER EMPLOYMENT WITH THE AGENCY

28. While employed by St. Christopher's during the afternoon/evening hours, Plaintiff also worked for Greenburgh Eleven School District as a crisis paraprofessional during the daytime hours. (Pl. Dep. 32).

29. Plaintiff's hours of work at Greenburgh Eleven School District (while she was simultaneously employed at St Christopher's were 8:35 am to 3:10 p.m. (Pl. Dep. 33).

30. Some days Plaintiff would get out of work at Greenburgh Eleven School District before 3:00 p.m. and go to work at St. Christopher's. (Pl. Dep. 349-50).

31. Mr. Riaz told Plaintiff that people should not work two jobs where both jobs related to child care. (Pl. Dep. 444-45).

32. Mr. Riaz told Plaintiff that if an individual works with children in the morning, they should work in a job like "McDonalds" in the afternoon. (Pl. Dep. 444-45).

33. Plaintiff has been continuously employed by Greenburgh Eleven School District since approximately 1994 with no break in service. (Pl. Dep. 32-33; 49).

34. Plaintiff's salary with Greenburgh Eleven School District is approximately $39,000 - $40,000. (Pl. Dep. 35).

35. Plaintiff has additional earnings from Greenburgh Eleven School District for work performed during the summer months. (Pl. Dep. 37).

36. Plaintiff obtains her health benefits/insurance through her employment with Greenburgh Eleven School District. (Pl. Dep. 167).

37. Plaintiff continues to work at Greenburgh Eleven School District. (Pl. Dep. 33).

## IV. THE ALLEGATIONS OF ABUSE AGAINST PLAINTIFF BY COTTAGE RESIDENTS

### A. The Investigation Conducted By the Agency.

38. In or around the beginning of January 2002, allegations of abuse were lodged against Plaintiff by residents of the cottage Plaintiff supervised. (Pl. Dep. 134-36; Pl. Dep. 314-15; Pl. Dep. Exs. 11, 12[5]).

39. According to Agency practice, allegations of abuse were required to be investigated and reported. (Pl. Dep. 174-75).

40. Plaintiff was suspended from employment with pay so an investigation could be conducted regarding the allegations of abuse. (See Pl. Dep. Exs. 11, 12).

41. As part of the investigation of abuse, statements were taken from residents of the cottage and Agency staff. (Pl. Dep. 135-36).

42. At the conclusion of the Agency's investigation, Plaintiff was demoted effective January 21, 2002. (Pl. Dep. Ex. 13[6]).

43. Plaintiff had a conversation with Mr. Meyer and Mr. Riaz about her demotion. (Pl. Dep. 96).

44. Mr. Meyer advised Plaintiff she was being demoted to a Youth Care Counselor position and transferred to the Valhalla campus, with a corresponding reduction in pay. (Pl. Dep. 116-117, 317, 318).

---

[5] A true and correct copy of the January 10, 2002 Memorandum to Plaintiff from Terry Johnson, marked as Exhibit 11 at the September 21, 2005 deposition of Plaintiff, is annexed to the Corcoran Aff. as Exhibit M. A true and correct copy of the January 14, 2002 letter to Plaintiff from Bernhard F. Meyer, Director of Human Resources, marked as Exhibit 12 at the September 21, 2005 deposition of Plaintiff, is annexed to the Corcoran Aff. as Exhibit N.

[6] A true and correct copy of the January 22, 2002 letter to Plaintiff from Bernhard F. Meyer, Director of Human Resources, marked as Exhibit 13 at the September 21, 2005 deposition of Plaintiff, is annexed to the Corcoran Aff. as Exhibit O.

45.     Mr. Meyer explained to Plaintiff that the Agency considered her length of service and the fact that she was a "good employee" in its decision to transfer her to another campus at the conclusion of their investigation. (Pl. Dep. 96, 115-16).

46.     As a Youth Care Worker for the Valhalla campus, Plaintiff was scheduled to report to Veronica Howell. (Pl. Dep. 117).

47.     Plaintiff did not have any personal or professional issues with Ms. Howell. (Pl. Dep. 117).

48.     Plaintiff never reported to work at the Valhalla campus. (Pl. Dep. 110).

49.     Plaintiff last worked at St. Christopher's in Dobbs Ferry in January 2002. (Pl. Dep. 110).

50.     Plaintiff took some time off from her employment. (Pl. Dep. 121-122).

51.     Mr. Meyer terminated her on April 19, 2002 after not hearing from her about her return to work. (See Corcoran Aff. Exs. S and T).

**B.      The Investigation Conducted By the Office of Child and Family Services.**

52.     The New York State Office of Child and Family Services ("OCFS") also conducted its own investigation of the allegations of abuse lodged against Plaintiff by residents of the Cottage. (Pl. Dep. 179).

53.     Plaintiff was interviewed as part of the OCFS investigation. (Pl. Dep. 175-76; 288-89; 412).

54.     The OCFS issued an "indicated" finding at the conclusion of its investigation. (Pl. Dep. 179-80; Pl. Compl. ¶ 11 (d)).

55.     The OCFS's finding was issued *after* the determination was made by the Agency to transfer Plaintiff to Valhalla. (Pl. Dep. 180).

7

56. Plaintiff was informed by the OCFS investigator that an "indicated" finding meant that there was some evidence that child abuse occurred. (Pl. Dep. 181).

57. Plaintiff appealed the "indicated" finding by OCFS and requested a formal hearing. (Pl. Dep. 181).

58. In 2004, an administrative hearing was conducted relating to the OCFS's "indicated" finding. (Pl. Dep. 26).

59. The "indicated" finding was later set aside by New York State in a decision dated January 14, 2005. (Pl. Dep. 232-33; Pl. Compl. ¶ 11(d)).

## V. PLAINTIFF'S ALLEGATIONS OF HARASSMENT AND DISCRIMINATION BY DEFENDANT RIAZ

60. In or about 1997, Defendant Mohammad Riaz began working for St. Christopher's as a Program Director at the Dobbs Ferry campus. (Pl. Compl. ¶ 11 (c)).

61. Mr. Riaz is of Pakistani descent. (Pl. Compl. ¶ 11 (a)).

62. Plaintiff's Complaint in this action includes an allegation that: "Because Riaz is a native of Pakistan and subscribes to the view of some members of that culture that females are inferior to males and should be subservient to males, he treats all female employees at St. Christopher's in a discriminatory manner." (See Pl. Compl. ¶ 11(a)).

63. Plaintiff's view of the Pakistani culture comes from watching television news and shows on the History Channel. (Pl. Dep. 212-13).

64. Plaintiff believes Mr. Riaz subscribes to the view that women are inferior to men because of the way he treated her personally. (Pl. Dep. 213).

65. Plaintiff testified that she is *not* alleging Mr. Riaz treated all female employees in a discriminatory manner. (Pl. Dep. 214).

66. Plaintiff identified the following acts of Defendant Riaz that form the basis of her discrimination and harassment claim:

8

    (a) Early on in his employment, Mr. Riaz referred to everyone at a group meeting "as being fucking stupid." (Pl. Dep. 55-56).

    (b) Mr. Riaz had a loud tone toward Plaintiff. (Pl. Dep. 57, 58, 65).

    (c) Mr. Riaz "harassed her" everyday by asking her to "do things." (Pl. Dep. 85-86).

    (d) In 1998, there was a riot on campus. Plaintiff was asked to come to work to help control the situation. (Pl. Dep. 16-17).

    (e) Plaintiff was asked to come to work at times other than scheduled times for meetings or training. (Pl. Dep. 18).

    (f) Mr. Riaz changed Plaintiff's scheduled days off to accommodate the religious observances of another manager, which affected Plaintiff and other male and female managers as well. (Pl. Dep. 89, 249).

    (g) Mr. Riaz created a "hostile work environment" by asking Plaintiff's supervisor to watch Plaintiff and report to him. (Pl. Dep. 145-48).

  67. Plaintiff was never disciplined by Mr. Riaz during her employment. (Pl. Dep. 162).

  68. Mr. Riaz "threatened" to discipline Plaintiff in January 2001 because of a leave of absence due to her allergies. (Pl. Dep. 163-164, 168-169).

  69. Defendant Riaz has terminated at least one other male supervisor reporting to him. (Pl. Dep. 27).

  70. According to Plaintiff, Riaz "had a problem with Rosa Wearing." (Pl. Dep. 173).

  71. Plaintiff has no knowledge of Riaz having a problem with any other employee. (Pl. Dep. 173).

9

72. Another supervisor, Sami Wahab, told Plaintiff (in the late 1990's) that Mr. Riaz thought Plaintiff was a "strong female" who was "too aggressive" and "need[ed] to go because she is a pain." (Pl. Dep. 151).

## VI. PLAINTIFF'S ALLEGATIONS OF RETALIATION

73. Plaintiff alleges that Defendants retaliated against her, which she understands to be "getting back" at her. (Pl. Dep. 205).

74. Plaintiff testified that Mr. Riaz "got back at her" because she was a female who spoke back and stood up to him. (Pl. Dep. 205).

75. When asked how Defendants retaliated against her, Plaintiff referred to her allegations of alleged discrimination. (Pl. Dep. 205-06).

76. Defendants did not harm Plaintiff in any manner after January, 2002. (Pl. Dep. 268).

## VII. PLAINTIFF'S CHARGE OF DISCRIMINATION AND THE PROCEDURAL POSTURE OF THIS LITIGATION

77. On or about January 23, 2002, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR"), dual filed with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on sex. (Pl. Dep. 136-37; Pl. Dep. Ex. 1).[7]

78. In her Charge, Plaintiff claims Mr. Riaz created a hostile work environment for her, as a female; and denied her equal terms, conditions and privileges of her employment because of her sex. (Pl. Dep. Ex. 1).

79. Plaintiff never amended her Charge of Discrimination. (Pl. Dep. 195-96).

---

[7] A true and correct copy of Plaintiff's January 23, 2002 Charge of Discrimination, marked as Exhibit 1 at the September 21, 2005, deposition of Plaintiff, is annexed to the Corcoran Aff. as Exhibit G.

10

80. The New York State Division of Human Rights issued and sent to Plaintiff, its Determination and Order After Investigation. (Pl. Dep. 192-193; Pl. Dep. Ex. 4).[8]

81. In its finding of "No Probable Cause," the NYSDHR stated that: "following opportunity for review," Plaintiff "has not presented material facts that a reasonable and prudent person would believe based upon the investigative evidence that a violation of the Human Rights Law has occurred." (See Corcoran Aff. Ex. J).

82. On January 31, 2005, the EEOC issued a Dismissal and Notice of Rights. (Pl. Dep. Ex. 3).[9]

83. Plaintiff does not know when and if she ever saw the aforementioned EEOC Dismissal and Notice of Rights (Pl. Dep. 141, 190-92; Pl. Dep. Ex. 3).

84. After retaining her attorney during the aforementioned administrative process, Plaintiff made it a practice to give any documents she received regarding her claims to her attorney. (Pl. Dep. 191).

85. Plaintiff believes she may have given a copy of the EEOC's notice to her counsel of record. (Pl. Dep. 191-92).

86. The address Plaintiff listed in her NYSDHR Charge is the same address listed on the EEOC's Notice of Rights. (See Corcoran Aff. Exs. G and I).

87. Plaintiff filed the initial Complaint in this matter on May 10, 2005, alleging sex discrimination, hostile work environment, and retaliation based on the aforementioned conduct, in violation of the Title VII, the New York Human Rights Law, and State tort law. (See Corcoran Aff. Ex. A.).

---

[8] A true and correct copy of the NYSDHR Determination and Order After Investigation, marked as Exhibit 4 at the September 21, 2005 deposition of Plaintiff, is annexed to the Corcoran Aff. as Exhibit J.

[9] A true and correct copy of the EEOC's Dismissal and Notice of Rights, marked as Exhibit 3 at the September 21, 2005 deposition of Plaintiff, is annexed to the Corcoran Aff. as Exhibit I.

88. On May 17, 2005, Defendants served their Answers and Affirmative Defenses to the Amended Complaint. (See Corcoran Aff. Exs. B, C, D, and E).

## VIII. PLAINTIFF'S FAILURE TO SEARCH FOR ALTERNATIVE EMPLOYMENT.

89. Since Plaintiff last worked for St. Christopher's in January, 2002, Plaintiff has not sought any type of alternative employment. (Pl. Dep. 100).

90. Even after Plaintiff's record was cleared after the administrative hearing on the OCFS's "indicated" finding, Plaintiff has not taken any steps to search for additional employment. (Pl. Dep. 100-01).

91. Other than making two telephone calls during Christmastime 2005 - - (one to Wal-Mart and the other to somewhere she cannot remember) - - Plaintiff has not attempted to replace her employment with St. Christopher's. (Pl. Dep. 359-60).

92. Plaintiff is waiting for this litigation to "clear up" before seeking other employment. (Pl. Dep. 101).

93. The instant litigation does not affect Plaintiff's ability to get additional employment. (Pl. Dep. 101).

Respectfully submitted,

JACKSON LEWIS LLP
One North Broadway, Suite 1502
White Plains, New York 10601
(914) 328-0404

By: _____
Susan M. Corcoran (SC 7504)
Susanne Kantor (SK 8278)

ATTORNEYS FOR DEFENDANTS

Dated: March 20, 2006
       White Plains, New York

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
ROSA WEARING,                                                   :
                                                                :
                                                                :          Index No. 05CIV4558 (CM)(MDF)
                          Plaintiff,                            :
                                                                :
        -against-                                               :
                                                                :
ST. CHRISTOPHER'S INC., MUHAMMAD RIAZ,                          :
LUIS MEDINA and BERNHARD F. MEYER,                              :
                                                                :
                          Defendants.                           :
----------------------------------------------------------------X

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendants' Local Rule 56.1 Statement has been served via First Class Mail, on March 20, 2006, on counsel of record for Plaintiff at the address listed below:

Peter J. Schmerge, Esq.
Ten Bank Street, Suite 650
White Plains, New York 10606
*Attorneys for Plaintiff*

Susanne Kantor